IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

TRINITY PRITCHARD,                      Case No. 3:23-cv-01001-JGC

       Plaintiff,

    v.                                          **ORDER**

FTM, LLC, et al.,

       Defendants.

This is a claim for unpaid compensation and damages under the Fair Labor Standards Act of 1938 ("FLSA"), 29 U.S.C. §§ 201–219, and Ohio law. This order regards a motion to dismiss certain counterclaims.

Defendant FTM is an Ohio limited liability company that runs a brewery and restaurant and offers accommodation in Bryan, Ohio. (Doc. 1, PgID. 4; Doc. 4, PgID. 30). Defendant John Trippy owns FTM. (Doc. 1, PgID. 4; Doc. 4, PgID. 30).

Plaintiff is Trinity Pritchard. Trinity worked for FTM and Trippy from around January 2022 until her suspension on May 1, 2023. (Doc. 1, PgID. 3; Doc. 4, PgID. 29). She alleges that FTM and Trippy violated the FLSA and Ohio law by failing to pay her at least minimum wage, by failing to pay appropriate overtime compensation, and by suspending her when she complained about these practices. (Doc. 1, PgID. 7–10).

Along with FTM and Trippy's answer to Trinity's complaint, FTM filed counterclaims against Trinity and two third parties, Lawrence Pritchard (Trinity's husband) and Flatrock Brewing Company ("Flatrock"). (Doc. 4, PgID. 43). Trinity, Lawrence, and Flatrock moved to

dismiss FTM's counterclaims for lack of subject-matter jurisdiction. (Doc. 15). FTM filed its opposition to this motion. (Doc. 17).[1] Trinity, Lawrence, and Flatrock then replied. (Doc. 18).

For the reasons that follow, I grant Trinity, Lawrence, and Flatrock's motion to dismiss FTM's counterclaims.

## Background

In her complaint, Plaintiff Trinity Pritchard alleges Defendant FTM, as well as Defendant Trippy, employed her from around January 2022 until her suspension on May 1, 2023. (Doc. 1, PgID. 3).

Trinity's job duties allegedly focused on the day-to-day operation of FTM's brewery, restaurant, and accommodations. (*Id.*). Those duties included such activities as food and drink service, guest check-in, and inventory management. (*Id.*).

Trinity claims that during the period of her employment, FTM and Trippy did not pay her the minimum hourly wage that the FLSA and Ohio law require. (*Id.* at PgID. 8). Trinity also claims that FTM and Trippy violated the FLSA and Ohio law by failing to pay appropriate overtime compensation. (*Id.* at PgID. 8–9).

Trinity alleges that when she raised these issues with Trippy, his reaction was to hire replacements for her and then suspend her. (*Id.* at 9–10). Trinity asserts against Trippy and FTM ten causes of action under the FLSA and Ohio law related to these allegations. (*Id.* at PgID. 11–20).

In its answer to Trinity's complaint, FTM admits that Trinity worked for FTM from around January 2022 until her suspension on May 1, 2023. (Doc. 4, PgID. 29). FTM further alleges, however, that Trinity was also an employee of third party and Counterclaim Defendant

---

[1] Trippy joined this opposition, (Doc. 17, PgID. 138), though he did not separately join FTM's initial counterclaim filing, (Doc. 4, PgID. 43).

2

Flatrock. (*Id.*). According to FTM, Trinity and her husband, third party and Counterclaim Defendant Lawrence Pritchard, own and operate Flatrock. (*Id.* at PgID. 43–44).

FTM asserts in its counterclaim that it reached an agreement with Flatrock whereby Flatrock was to serve as a "consulting brewer and manager." (*Id.* at PgID. 44). Under this arrangement, according to FTM, Flatrock was "by and through Lawrence and Trinity . . . [to] manage FTM's microbrewery and restaurant as well as the associated AirBNB rooms for rent at the property." (*Id.*).

FTM alleges that Lawrence and Trinity abused their position as FTM's "consulting managers." (*Id.* at PgID. 45). FTM asserts that Lawrence and Trinity leveraged their access to FTM credit cards and cash to steal from and defraud FTM through, among other practices, embezzlement and fraudulent invoicing. (*Id.*). FTM asserts as counterclaims five causes of action under state law related to these allegations.[2]

FTM also asserts a sixth cause of action under the FLSA. FTM identifies this cause of action as its "Joint Employer" claim. (*Id.* at PgID. 49). FTM alleges that Lawrence and Flatrock were also Trinity's "employers" under the FLSA's definition of that term. (*Id.* at PgID. 49–50). FTM asserts that "[t]o the extent liability is found to exist against FTM as regards to Trinity's claims and causes of action . . . Flatrock and Lawrence are 'joint employers' and liable, both individually and jointly." (*Id.* at PgID. 50). On this ground, FTM seeks an order "declaring Flatrock and Lawrence as Trinity's joint employers." (*Id.* at PgID. 51).

Trinity, Lawrence, and Flatrock moved to dismiss FTM's counterclaims for lack of subject-matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1). (Doc. 15, PgID.

---

[2] Specifically, FTM asserts state-law claims against Trinity, Lawrence, and Flatrock for breach of contract, breach of fiduciary duty, fraud, civil theft, and civil conspiracy. (Doc. 4, PgID. 46–49). FTM further alleges that "the amount in controversy exceeds $25,000 but shall be proven with specificity at trial." (*Id.* at PgID. 44).

3

102). The parties dispute whether I have jurisdiction under 28 U.S.C. § 1331 over FTM's "Joint Employer" claim. (Doc. 17, PgID. 143; Doc. 18, PgID. 174–78).[3] The parties also dispute whether I have and should exercise supplemental jurisdiction under 28 U.S.C. § 1367 over FTM's state-law counterclaims. (Doc. 15, PgID. 113–30; Doc. 17, PgID. 141–42, 144–56).

**Legal Standard**

"Federal courts are courts of limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). "That jurisdiction extends only to cases that the Constitution and Congress have empowered the federal courts to resolve." *DHSC, LLC v. Cal. Nurses Ass'n*, 700 F. App'x 466, 470 (6th Cir. 2017).

The party bringing a claim "has the burden of proving jurisdiction to survive a motion to dismiss." *Id.* "Rule 12(b)(1) motions to dismiss for lack of subject-matter jurisdiction generally come in two varieties: a facial attack or a factual attack." *Collins v. Toledo Blade*, No. 23-cv-00302, 2024 WL 1094613, at *3 (N.D. Ohio Mar. 13, 2024) (Carr, J.) (quoting *Gentek Bldg. Prods., Inc. v. Sherwin-Williams Co.*, 491 F.3d 320, 330 (6th Cir. 2007)). I have previously explained the differences between these two types of attack:

> "When reviewing a facial attack," which challenges the sufficiency of the allegations, "a district court takes the allegations in the complaint as true" and, "[i]f those allegations establish federal claims, jurisdiction exists." But where a defendant makes a factual attack, a court does not presume the complaint's allegations are true. Rather, the party invoking the court's jurisdiction must

---

[3] In its initial counterclaim filing, FTM asserted only § 1367 as a basis for my jurisdiction over its counterclaims. (Doc. 4, PgID. 44). FTM did not raise § 1331 as a basis for my jurisdiction over its "Joint Employer" counterclaim until filing its brief in opposition to Trinity, Lawrence, and Flatrock's motion to dismiss. (Doc. 17, PgID. 143–44). Admittedly, a plaintiff must at the outset plead "a short and plain statement of the grounds for the court's jurisdiction." Fed. R. Civ. P. 8(a)(1). But in doing so, a plaintiff "need not set forth the statutory basis for the court's subject-matter jurisdiction." *Flakes v. Unknown Party*, No. 11-cv-640, 2011 WL 4005448, at *2 (W.D. Mich. Aug. 10, 2011). Instead, a plaintiff must only "allege facts from which jurisdiction may at least be inferred." *Id.* Here, FTM's counterclaim pleading identifies the provisions of the FLSA relevant to FTM's "Joint Employer" counterclaim. (Doc. 4, PgID. 49). That pleading therefore supports a ready inference that FTM's "Joint Employer" claim is allegedly a "cause of action [] based on federal law." *Flakes*, 2011 WL 4005448, at *2 (citing *Palkow v. CSX Transp., Inc.*, 431 F.3d 543, 552 (6th Cir. 2005)).

introduce evidence supporting federal jurisdiction, and the court must weigh the evidence and decide whether jurisdiction is secure.

*Vantu v. Echo Recovery, L.L.C.*, 85 F. Supp. 3d 939, 941–42 (N.D. Ohio 2015) (Carr, J.) (citations omitted) (quoting *Gentek*, 491 F.3d at 330).

Two potential bases for my subject-matter jurisdiction over FTM's counterclaims are at issue here: (1) federal-question jurisdiction under 28 U.S.C. § 1331; and (2) supplemental jurisdiction under 28 U.S.C. § 1367.[4]

### 1. Federal-Question Jurisdiction Under 28 U.S.C. § 1331

§ 1331 gives federal district courts "original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." § 1331. "A claim arises under federal law . . . when the cause of action is (1) created by a federal statute or (2) presents a substantial question of federal law." *Miller v. Bruenger*, 949 F.3d 986, 991 (6th Cir. 2020).

For a federal statute to create a cause of action, that cause of action must exist "either expressly in the text of the statute, or as a direct implication of that text." *Id.*

Alternatively, an underlying state-law claim raises a substantial question of federal law where "(1) '[that] state-law claim necessarily raise[s] a stated federal issue,' (2) that is 'actually disputed and substantial,' (3) 'which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities.'" *Est. of Cornell v. Bayview Loan Servicing, LLC*, 908 F.3d 1008, 1014 (6th Cir. 2018) (quoting *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 314 (2005)).

---

[4] A third avenue for federal-court jurisdiction over a party's claims is diversity jurisdiction under 28 U.S.C. § 1332. That provision requires diversity of citizenship between opposing parties and an amount in controversy over $75,000. § 1332(a). Here, the opposing parties lack diversity of citizenship. (Doc. 1, PgID. 3–4; Doc. 4, PgID. 43–44). Diversity jurisdiction over FTM's counterclaims is therefore unavailable.

Here, FTM argues that I have federal-question jurisdiction under § 1331 over its "Joint Employer" counterclaim. (Doc. 17, PgID. 143–44).

### 2. Supplemental Jurisdiction Under 28 U.S.C. § 1367

§ 1367 provides for federal-court jurisdiction "over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." § 1367(a). To meet this standard, additional claims "must derive from a common nucleus of operative fact." *Kubala v. Smith*, 984 F.3d 1132, 1137 (6th Cir. 2021) (quoting *United Mine Workers v. Gibbs*, 383 U.S. 715, 725 (1966)).

I have previously explained that "[o]perative facts are facts that are relevant to the resolution of the claim." *Corpas v. Essex*, No. 20-cv-1806, 2021 WL 1555004, at *2 (N.D. Ohio Mar. 8, 2021) (Carr, J.) (quoting *Vogel v. Ne. Ohio Media Grp. LLC*, No. 17-cv-272, 2017 WL 3157920, at *1 (N.D. Ohio July 25, 2017) (Boyko, J.)). "Where the evidence needed to prove one claim differs materially from that needed to prove the purportedly supplemental claim, the claims do not derive from a common nucleus of operative facts." *Id.*

Some courts begin their analysis of supplemental jurisdiction over counterclaims by first determining whether the counterclaims are compulsory or permissive under Rule 13 of the Federal Rules of Civil Procedure. *See, e.g.*, *Anderson v. P.F. Chang's China Bistro, Inc.*, No. 16-14182, 2017 WL 3616475, at *4–6 (E.D. Mich. Aug. 23, 2017). Other courts, including the First, Second, and Seventh Circuits, have concluded that the existence of supplemental jurisdiction over counterclaims is a separate inquiry from whether those counterclaims are compulsory or permissive. *See, e.g.*, *Global NAPs, Inc. v. Verizon New Eng. Inc.*, 603 F.3d 71, 87 (1st Cir. 2010) ("[W]e hold that § 1367 supersedes case law on supplemental jurisdiction that had

6

distinguished between compulsory and permissive counterclaims."); *Edwards v. Equitable Acceptance Corp.*, No. 14-cv-00888, 2015 WL 3607297, at *2–4 (N.D. Ohio June 8, 2015) (Wells, J.) (summarizing Second and Seventh Circuit caselaw, as well as persuasive district-court cases from the Sixth Circuit, and concluding "that whether [the defendant]'s counterclaim is permissive or compulsory does not bear on the issue of supplemental jurisdiction"). The Sixth Circuit itself has not squarely addressed this issue.

This is a "muddied" area of the law. *Cruz v. Don Pancho Mkt., LLC*, 167 F. Supp. 3d 902, 905 (W.D. Mich. 2016). But at least in this case, I see no need to reach the question of whether FTM's counterclaims are compulsory or permissive.

First, the parties do not hinge their arguments on this issue. Trinity, Lawrence, and Flatrock argue that the counterclaims are permissive. But in doing so they rely on the same "common nucleus of operative fact" standard for supplemental jurisdiction discussed above. (Doc. 15, PgID. 116–17). FTM does not address the issue.

Second, the Sixth Circuit has described § 1367 as "a sweeping grant of supplemental jurisdiction giving the courts supplemental jurisdiction over *all claims* not excluded by the second part (§ 1367(b))." *Olden v. LaFarge Corp.*, 383 F.3d 495, 504 (6th Cir. 2004) (emphasis added). And § 1367(b)'s limit on supplemental jurisdiction only bars the addition of claims that would violate the rules of diversity jurisdiction in cases founded on such jurisdiction.

The "common nucleus of operative fact" standard for supplemental jurisdiction must therefore capture within its ambit both compulsory and permissive counterclaims. It follows that, at least where counterclaims fail to meet that standard, further classifying them as permissive or compulsory is unnecessary. *See Meadows v. Trumbull Cnty. Health Dep't*, No. 12-cv-02279, 2013 WL 1819223, at *7 (N.D. Ohio Apr. 29, 2013) (Pearson, J.) ("[A] court seeking to

7

determine whether it has supplemental jurisdiction over a counterclaim may find it more useful to assess whether the counterclaim passes the common nucleus test than to engage in an inquiry into whether the counterclaim is compulsory or permissive.").

Finally, even where a federal court has supplemental jurisdiction over additional claims, § 1367 permits the court to decline to exercise that jurisdiction where:

> (1) the claim raises a novel or complex issue of State law, (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction, (3) the district court has dismissed all claims over which it has original jurisdiction, or (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

§ 1367(c).

Ultimately, supplemental jurisdiction "is a doctrine of discretion, not of plaintiff's right." *Habich v. City of Dearborn*, 331 F.3d 524, 535 (6th Cir. 2003) (quoting *Gibbs*, 383 U.S. at 726).

Here, FTM argues I have and should exercise supplemental jurisdiction under § 1367 over its state-law counterclaims. (Doc. 17, PgID. 141–42, 144–56).

## Discussion

### 1. FTM's "Joint Employer" Counterclaim

FTM titles count six of its counterclaims as a "Joint Employer" counterclaim. Through this counterclaim, FTM seeks an order "declaring Flatrock and Lawrence as Trinity's joint employers." (Doc. 4, PgID. 51). I conclude that FTM lacks standing to pursue such a declaration. I therefore dismiss FTM's "Joint Employer" counterclaim for lack of subject-matter jurisdiction.[5]

---

[5] Through its state-law civil conspiracy claim, FTM also desires "an order holding [Trinity, Lawrence, and Flatrock] jointly and severally liable" for FTM's state-law counterclaims. (Doc. 4, PgID. 48–50). As further discussed below, I dismiss those state-law claims for lack of subject-matter jurisdiction. I therefore do not reach the question of Trinity, Lawrence, and Flatrock's joint and several liability for those state-law claims.

The Declaratory Judgment Act provides in relevant part that "[i]n a case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration." 28 U.S.C. § 2201(a). The statute's "actual controversy" requirement "is not satisfied, and a court therefore has no jurisdiction, when the claimant lacks standing, that is, a sufficiently concrete and redressable interest in the dispute." *Fieger v. Mich. Sup. Ct.*, 553 F.3d 955, 961 (6th Cir. 2009) (internal quotations and citations omitted). The declaratory-judgment plaintiff "must demonstrate that 'the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.'" *Hemlock Semiconductor Corp. v. Kyocera Corp.*, 747 F. App'x 285, 292 (6th Cir. 2018) (quoting *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007)).[6]

In *Hemlock*, the defendant in its counterclaim sought a declaratory judgment that certain provisions of its contracts with the plaintiff were unlawful. *Id.* at 287. The plaintiff, however, had not sought damages under those provisions in its underlying suit and could not do so until the parties met certain, still unfulfilled conditions:

> [F]or [the plaintiff] to invoke the [relevant] provisions, several events would need to occur: [the defendant] would need to default, [the plaintiff] would need to serve notice of default, 180 days would have to pass in which [the defendant] could cure,

---

[6] FTM relies on the Sixth Circuit's decision in *Grable* to argue that I have subject-matter jurisdiction under § 1331 because FTM's "allegations necessarily implicate and require interpretation of a federal statute, the FLSA." (Doc. 17, PgID. 143 (citing *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 377 F.3d 592, 594 (6th Cir. 2004), *aff'd*, 545 U.S. 308 (2005))). This argument misreads *Grable*, which does not stand for the proposition that a claim requiring interpretation of a federal statute suffices to confer subject-matter jurisdiction under § 1331. In *Grable*, subject-matter jurisdiction was appropriate because the interpretation of federal law would resolve an underlying state-law claim. *Grable*, 377 F.3d at 596 ("Disposition of all the aspects of this case, including those related to the traditional state law property issues, turn [sic] on construction of federal tax law."); *see Grable*, 545 U.S. at 312 ("There is [] another longstanding, if less frequently encountered, variety of federal 'arising under' jurisdiction, this Court having recognized for nearly 100 years that in certain cases federal-question jurisdiction will lie over state-law claims that implicate significant federal issues."). Here, no similar underlying state-law claim hinges on my interpretation of the FLSA's joint-employer doctrine.

9

and at the close of that period, [the plaintiff] would need to elect to terminate the contract.

*Id.* at 291.

The Sixth Circuit concluded that "[t]he chain of contingencies necessary to trigger the contracts' [relevant] provisions" made the defendant's potential liability under them insufficiently immediate to confer standing to challenge them. *Id.* at 292. The Sixth Circuit noted that "damages are not due and may never be." *Id.*

Through its "Joint Employer" claim here, FTM seeks a declaratory judgment that establishes the legal relationship under the FLSA between itself, Flatrock, and Lawrence.[7] But as in *Hemlock*, the "chain of contingencies" here connecting such a declaratory judgment with a final determination of joint and several liability for FTM, Flatrock, and Lawrence is too speculative to confer standing.

Crucially, the FLSA does not provide joint employers with a cause of action for contribution or indemnification from one another. *See, e.g.*, *Crowell v. M St. Ent., LLC*, No. 21-cv-00517, 2023 WL 2763125, at *4 (M.D. Tenn. Apr. 3, 2023) ("[T]he Sixth Circuit has not addressed the issue of contribution and indemnification in FLSA cases, [but] courts have routinely dismissed these claims." (quoting *Neilwoldman v. AmeriColor, LLC*, No. 18-cv-00151, 2018 WL 4384996, at *3 (M.D. Tenn. Sept. 13, 2018))); *Scalia v. Emp. Sols. Staffing Grp., LLC*, 951 F.3d 1097, 1105 (9th Cir. 2020) (holding "that the FLSA does not imply a right to contribution or indemnification for liable employers" and "declin[ing] to make new federal

---

[7] Trinity, Flatrock, and Lawrence in their briefing recast FTM's request for a joint-employer declaration under the FLSA as an attempt at "indemnification or contribution." (Doc. 18, PgID. 175). They then focus their argument regarding this point on the lack of an employer cause of action for indemnification or contribution under the FLSA. (Doc. 15, PgID. 129–30; Doc. 18, PgID. 173–78). As I note shortly, the lack of a joint-employer cause of action for contribution or indemnification under the FLSA is critical to my decision. However, I decline to revise FTM's clearly stated request only for "an order declaring Flatrock and Lawrence as Trinity's joint employers," (Doc. 4, PgID. 51), into a claim for contribution or indemnification from Flatrock and Lawrence.

common law that recognizes those rights"); *Herman v. RSR Sec. Servs. Ltd.*, 172 F.3d 132, 144 (2d Cir. 1999) (collecting cases and concluding that "there is no right to contribution or indemnification for employers held liable under the FLSA"); *New York v. Scalia*, 490 F. Supp. 3d 748, 761 (S.D.N.Y. 2020) ("The joint employment doctrine addresses only from *whom* the employee may collect damages.").

Under the FLSA, FTM cannot as a matter of law bring its own claim for contribution or indemnification against Flatrock and Lawrence as joint employers. Instead, the only avenue for shared liability across those three parties requires Trinity to sue Lawrence and Flatrock as joint employers alongside FTM. The chain of contingencies that would result in joint-employer liability for FTM, Flatrock, and Lawrence is therefore just as speculative as that in *Hemlock*, if not more so.

Admittedly, the *Hemlock* court reached its conclusion after focusing on a series of four events that needed to occur before the *Hemlock* plaintiff could in future assert a claim against the defendant under the relevant contractual provisions. *Hemlock*, 747 F. App'x at 291. The scenario contemplated here involves only one contingent event—whether Trinity might in future choose to also sue Lawrence and Flatrock as joint employers under the FLSA.

But in *Hemlock*, the defendant controlled whether some of the relevant contingencies would come to pass, including whether to default in the future and whether to cure that default. *Id.* Here, whether Trinity in future sues Lawrence and Flatrock as joint employers under the FLSA is entirely in Trinity's hands. FTM, even with a declaratory judgment from me that Lawrence and Flatrock are joint employers under the FLSA, has no FLSA claim to press.

The mere possibility that a plaintiff might later bring related claims against additional parties does not provide the defendant with standing to insist that the court determine liability

11

regarding those related claims across those additional parties now. *See Hous. Enter. Ins. Co. v. Hope Park Homes Ltd. Dividend Hous. Assoc. Ltd. P'ship*, 446 F. Supp. 3d 229, 240 (E.D. Mich. 2020) ("While it may be desirable to have all parties tangentially related to a case joined therein, such joinder is not justified when it allows the court to engage in resolution of hypothetical abstract questions." (quoting *Allstate Ins. Co. v. Wayne County*, 760 F.2d 689, 697 (6th Cir. 1985))). That Trinity could one day sue Lawrence and Flatrock to collect on any FLSA liabilities that FTM might owe does not provide FTM with standing to pursue a declaratory judgment preemptively allocating those liabilities.

For me to decide now whether Lawrence and Flatrock are joint employers with FTM under the FLSA would be for me to improperly adjudicate what is still only a hypothetical, abstract controversy. Because count six of FTM's counterclaims, its "Joint Employer" claim, lacks "sufficient immediacy and reality," *Hemlock*, 747 F. App'x at 292, FTM lacks standing to pursue that claim. I therefore dismiss count six of FTM's counterclaims for lack of subject-matter jurisdiction.[8]

### 2. FTM's State-Law Counterclaims

FTM argues I have subject-matter jurisdiction over its remaining state-law claims under § 1367. (Doc. 17, PgID. 144–56). I disagree. FTM's state-law claims do not "derive from a common nucleus of operative fact," *Kubala*, 984 F.3d at 1137, because "the evidence needed to prove [Plaintiff Trinity's underlying] claim differs materially from that needed to prove the purportedly supplemental claim[s]," *Corpas*, 2021 WL 1555004, at *2.

---

[8] In their reply brief, Trinity, Lawrence, and Flatrock also argue that FTM failed to adequately plead that Lawrence and Flatrock are joint employers under the FLSA. (Doc. 18, PgID. 178–85). Given my conclusion above, I do not reach that question in this order.

FTM's state-law counterclaims include breach of contract, breach of fiduciary duty, fraud, civil theft, and civil conspiracy. (Doc. 4, PgID. 46–49). FTM brings each of these counterclaims against not just Trinity, but also Lawrence and Flatrock. (*Id.*). FTM argues that its counterclaims "arise out of the same case or controversy because . . . all claims arise out of the period of employment and any accounting necessary will require an intertwined analysis." (Doc. 17, PgID. 145).

As an initial matter, that the claims arise out of a single employment relationship is not alone sufficient for the exercise of supplemental jurisdiction. *See, e.g.*, *Wilson v. Wings Over Happy Valley MDF, LLC*, No. 17-cv-00915, 2018 WL 437385, at *4–5 (M.D. Pa. Jan. 16, 2018) (concluding "the fact that the claims and counterclaims arose in the context of one employment relationship . . . is not alone sufficient" to identify compulsory counterclaims or supplemental jurisdiction under § 1367).

Also insufficient by itself for supplemental jurisdiction is the bare fact that the parties' claims might affect a final "accounting" among them. *See Lanham v. Metro Towing, LLC*, No. 13-188, 2014 WL 2897430, at *2 (E.D. Ky. June 26, 2014) ("[B]oth parties contend that they owe each other money. This cannot be a basis for supplemental jurisdiction. . . . It is *always* true that when two parties bring suit against each other, the result of each action will determine 'who owes whom money.'").

FTM focuses on three cases to argue that the exercise of supplemental jurisdiction is nevertheless proper. I find all three cases distinguishable from the facts here.

First, in *Frisby v. Keith D. Weiner & Associates Co.*, the plaintiff claimed that "Defendant [] failed to pay overtime wages and provide [the plaintiff] with breaks on which she was completely relieved of work duties." 669 F. Supp. 2d 863, 872 (N.D. Ohio 2009) (Gwin, J.).

13

The defendant counterclaimed for money that the plaintiff allegedly owed on a loan that the plaintiff was to repay through paycheck deductions. *Id.* at 866. The *Frisby* court concluded that these claims shared a "common factual connection" because "payment of the [loan] is linked specifically to any payroll funds potentially due [to the plaintiff]." *Id.* at 872.

FTM's claims here, however, have no similarly direct relationship to the wages FTM might owe Trinity under the FLSA and Ohio law. In *Frisby*, whether the defendant underpaid the plaintiff depended in part on the validity of the defendant's counterclaim. Here, whether FTM underpaid Trinity for her hours worked has nothing to do with whether Trinity, along with Lawrence and any other Flatrock agents, conspired to breach the terms of their contract and their fiduciary duties or committed fraud and civil theft.

FTM also relies on *Pyatt v. Sentek Corp.*, No. 13-cv-998, 2014 WL 868233 (S.D. Ohio Mar. 5, 2014). There, the plaintiff's claims were "about the alleged failure to pay overtime." *Id.* at *2. And the defendant's counterclaims were "about the purported unauthorized use by [the plaintiff] of the company credit card for personal purchases and the unauthorized retention of uniform items." *Id.* The *Pyatt* court decided to exercise supplemental jurisdiction over the defendant's counterclaims because:

> All of the claims arise out of the employer-employee relationship and, importantly, will involve often overlapping or intertwined analysis of when and where [the plaintiff] worked (which informs the issue of the use of his company credit card) and analysis of how he was compensated (which also informs the use of the credit card issue).

*Id.* at *3.

Admittedly, FTM here alleges fraud in a form somewhat like the misconduct alleged in *Pyatt*. (Doc. 4, PgID. 47 ("Lawrence and Trinity made fraudulent representations to FTM by [o]btaining credit card reimbursements for personal expenses and/or Flatrock expenses[.]")). But

14

unlike *Pyatt*, no party suggests here that credit-card reimbursement was part of Trinity's regular compensation package. Also, unlike *Pyatt*, here FTM does not specifically allege fraudulent credit card use, only fraudulent reimbursement. *Id.* Thus, this case lacks the "overlapping or intertwined analysis of when and where [the plaintiff] worked" that was important to the *Pyatt* court's decision to exercise supplemental jurisdiction. Of course, Trinity's FLSA wage claims may require such an analysis of when and where she worked. FTM's state-law claims, however, focus on what Trinity, Lawrence, and any other Flatrock agents did or did not do both during and outside work hours.

Finally, FTM also relies on *Lombardi v. City of Cornersville*, No. 06-0072, 2007 WL 190324 (M.D. Tenn. Jan. 22, 2007). There the plaintiff alleged that the defendant "wrongfully failed to pay Plaintiff overtime wages." *Id.* at *1. The defendant filed a counterclaim "alleging that, while [Plaintiff] was employed by Defendant, Plaintiff received wrongfully appropriated funds, bonuses and wages to which he was not entitled." *Id.* The *Lombardi* court decided to exercise supplemental jurisdiction over the counterclaim:

> Defendant asserts that Plaintiff received *more* payments than those to which he was entitled as an employee of Defendant. Plaintiff is claiming that he received *too little* payment as an employee of Defendant. . . . Plaintiff's credibility may be key to his FLSA claim (that is, when and how often he worked overtime without compensation) and his credibility may be key to the Counterclaim, which charges him with misappropriation of funds.

*Id.* at *2.

The essence of the *Lombardi* parties' dispute was whether the defendant over- or underpaid the plaintiff. The counterclaims in this case, however, are not so narrow. Of course, Trinity's credibility may play a role in adjudicating both her FLSA claims and FTM's counterclaims. But, again, whether Trinity can credibly establish her hours worked is a different question from whether she, Lawrence, and Flatrock can credibly

15

establish what they did or did not do, both during and outside work hours, related to FTM's counterclaims. Evidence and analysis of the former question does not significantly overlap or intertwine with evidence and analysis of the latter.

This case bears a much greater resemblance to those where courts have dismissed state-law counterclaims for lack of subject-matter jurisdiction. For example, in *Anderson v. P.F. Chang's China Bistro, Inc.*, a plaintiff sous chef at the defendant restaurant sought back wages under the FLSA and state law regarding work for which the defendant allegedly did not pay him minimum wage or overtime. No. 16-14182, 2017 WL 3616475, at *1 (E.D. Mich. Aug. 23, 2017). The defendant restaurant brought "accounting and offset/recoupment, breach of contract, unjust enrichment and restitution, and faithless servant" counterclaims. *Id.* at *5.

Applying the "common nucleus of operative fact" test, the court in *Anderson* concluded that "[a]lthough there would be some evidentiary overlap regarding the type of duties that [the plaintiff] performed as a Sous Chef, the Counterclaims would involve a substantial amount of additional evidence that would not be necessary to prove or defend [the plaintiff]'s claim." *Id.* In the context of determining whether the counterclaims were compulsory or permissive, the *Anderson* court additionally noted:

> In this case, the parties' claims involve different laws and evidence. [The plaintiff]'s labor claims focus on how many hours he worked, how much he was paid, and whether, as a Sous Chef, he was an exempt or non-exempt employee under the FLSA. [The defendant's] Counterclaims, on the other hand, involve questions of whether the parties had a contract[,] what any contract required, whether [the plaintiff] breached any contract, whether [the plaintiff] was unjustly overpaid for work he performed, whether [the plaintiff] engaged in misconduct or grossly mismanaged [the defendant's] affairs, and to what extent, if any, [the defendant] was damaged.

*Id.* at *4; *see also, e.g.*, *Sneed v. Wireless PCS Ohio #1, LLC*, No. 16-cv-1875, 2017 WL 879591, at *3 (N.D. Ohio Mar. 6, 2017) (Parker, Mag. J.) ("[D]efendants' claims of misappropriation, theft, conversion of business property, damage to reputation, breach of contract, breach of fiduciary duty, and intentional tort claims arise under Ohio law not implicated in plaintiff's FLSA claim. And none of the evidence that would be needed to prove the counterclaims would be necessary to prove or defend the FLSA claim.").

The state-law counterclaims at issue here are like those in *Anderson* and *Sneed*. These counterclaims concern the terms of the parties' agreement, the parties' contractual duties to one another, the nature of their possible fiduciary relationship, details of their various business activities, and the extent of any harm to FTM. Adjudicating these issues "would involve a substantial amount of additional evidence that would not be necessary to prove or defend" Trinity's underlying FLSA claims. *Anderson*, 2017 WL 3616475, at *5.

Because "the evidence needed to prove [Plaintiff Trinity's underlying] claim differs materially from that needed to prove the purportedly supplemental claim[s]," *Corpas*, 2021 WL 1555004, at *2, FTM's state-law claims do not "derive from a common nucleus of operative fact," *Kubala*, 984 F.3d at 1137. I therefore conclude that exercising supplemental jurisdiction over FTM's state-law counterclaims would be improper under § 1367(a).

But even assuming supplemental jurisdiction over these counterclaims is proper, I decline to exercise that jurisdiction pursuant to my discretionary authority under § 1367(c)(2). That subsection provides in relevant part: "The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if . . . the claim

17

substantially predominates over the claim or claims over which the district court has original jurisdiction." § 1367(c)(2).

To allow FTM's counterclaims to proceed in this forum alongside Trinity's underlying FLSA claims would entirely "change the nature of this lawsuit." *Anderson*, 2017 WL 3616475, at *5; *see also Sneed*, 2017 WL 879591, at *3 ("The counterclaims would change the nature of this lawsuit and would predominate over plaintiff's statutory wage claim.").

Critically, FTM brings each of its state-law counterclaims against not just Trinity, but also Lawrence and Flatrock. These counterclaims would therefore engulf Trinity's claims for unpaid wages and overtime within a larger dispute involving unrelated law and evidence across a broader set of parties. Submerging Trinity's FLSA claims in such a sea of other issues would subvert the purpose of the FLSA. *See Wagoner v. N.Y.N.Y., Inc.*, No. 14-cv-480, 2015 WL 1468526, at *5 (S.D. Ohio Mar. 30, 2015) ("The only economic feud contemplated by the FLSA involves the employer's obedience to minimum wage and overtime standards. To clutter these proceedings with the minutiae of other employer-employee relationships would be antithetical to the purpose of the Act." (quoting *Brennan v. Heard*, 491 F.2d 1, 4 (5th Cir. 1974))).[9]

---

[9] FTM seems to focus its argument regarding this issue of counterclaim predominance in part on the difference in number between the claims and counterclaims here. (Doc. 17, PgID. 154–56). FTM relies in support of this argument on *Frisby*, discussed above, and *Sholtz v. Emergency Med. Transp., Inc.*, No. 20-cv-2328, 2021 WL 964128 (N.D. Ohio Mar. 15, 2021) (Calabrese, J.). But neither court in those cases discussed the relative number of claims and counterclaims as a factor in those decisions. Intuitively, the difference in number between claims and counterclaims might sometimes rise to a level where that difference should play a role in analyzing whether counterclaims substantially predominate. But far more important to the analysis is the qualitative nature of the claims and counterclaims. The mere fact that claims outnumber counterclaims, or vice versa, often does not say much about possible counterclaim predominance.

I therefore dismiss FTM's remaining state-law counterclaims for lack of subject-matter jurisdiction.[10]

**Conclusion**

For the foregoing reasons, I grant Trinity, Lawrence, and Flatrock's motion to dismiss FTM's counterclaims.

It is, therefore, ORDERED THAT:

1. Trinity, Lawrence, and Flatrock's motion to dismiss FTM's counterclaims under Rule 12(b)(1) (Doc. 15) be, and the same hereby is, granted.

The Clerk will forthwith set a status/scheduling conference.

SO ORDERED.

*/s/ James G. Carr*
Sr. U.S. District Judge

---

[10] Trinity, Lawrence, and Flatrock argue that the FLSA bars or preempts FTM's state-law counterclaims. (Doc. 15, PgID. 125; Doc. 18, PgID. 173). I disagree. The FLSA bars employer counterclaims only when those counterclaims are contingent on a finding of FLSA liability. *See, e.g.*, *Provencher v. Bimbo Bakeries USA, Inc.*, No. 22-cv-198, 2023 WL 8436279, at *8 (D. Vt. Dec. 5, 2023) ("[Defendant]'s counterclaim amounts to an assertion that if [Defendant] acted unlawfully, [Plaintiffs] should have to relinquish contractual benefits to reduce [Defendant]'s financial liability."); *De Angelis v. Nat'l Ent. Grp., LLC*, No. 17-cv-924, 2018 WL 4334553, at *5 (S.D. Ohio Sept. 11, 2018) ("Defendants' counterclaims are both contingent on [the plaintiff employee] being successful in the lawsuit, and thus would only come in to play after the court would make such a finding. If the Court did indeed make such a finding, the counterclaims would not be permissible."). Such contingent employer counterclaims discourage employee suits under the FLSA and thereby undermine the statute's "central purpose: to eliminate labor conditions detrimental to the maintenance of the minimum standard of living . . . and to ensure that employees are fairly compensated." *Provencher*, 2023 WL 8436279, at *10 (internal quotations and citations omitted). Here, however, none of FTM's state-law counterclaims are contingent on FTM's FLSA liability. Although I lack subject-matter jurisdiction to hear these counterclaims as discussed above, nothing in this order forecloses these state-law counterclaims from state-court jurisdiction.